```
                  UNITED STATES DISTRICT COURT
                   MIDDLE DISTRICT OF FLORIDA
                       FORT MYERS DIVISION
```

MCC MANAGEMENT OF NAPLES, INC.; BGC
II MANAGEMENT OF NAPLES, INC.,

                 Plaintiffs,

vs.                              Case No. 2:06-cv-571-FtM-29SPC

INTERNATIONAL    BANCSHARES
CORPORATION,

                 Defendant.
_____

**OPINION AND ORDER**

     This matter comes before the Court on defendant's Motion to Dismiss for Lack of Personal Jurisdiction or, in the Alternative, to Transfer Venue (Doc. #16), filed on November 28, 2006. Defendant's Clarification to Motion to Dismiss or Transfer Venue (Doc. #17) was filed on November 29, 2006. Plaintiffs filed a Memorandum in Opposition (Doc. #24) on December 19, 2006. Defendant's Reply Brief (Doc. #34) was filed on January 29, 2007, and Plaintiffs' Surreply (Doc. #37) was filed on February 12, 2007. The Request for Oral Argument (Doc. #18) will be denied because the matters have been fully briefed.

**I.**

This matter is before the Court on a five count Amended Complaint (Doc. #5) filed by plaintiffs MCC Management of Naples, Inc. (MCC) and BGC II Management of Naples, Inc. (BGC)

(collectively plaintiffs), both Florida corporations, against International Bancshares Corporation (IBC), a Texas corporation. Plaintiff MCC is the assignee of the rights and obligations of Miles C. Collier, and BGC is the assignee of the rights and obligations of Barron G. Collier. (Doc. #5, ¶ 2.)  Defendant IBC is the successor in interest to the assets and liabilities of Local Financial Corporation (LFC), a Delaware corporation.  (Doc. #5, ¶ 3.)

Prior to 1997, Miles and Barron Collier (the Colliers) owned all outstanding shares of LFC, a corporation which operated banks in Oklahoma.  In 1997, the Colliers sold their ownership interest in LFC; to accomplish this sale, LFC and the Colliers entered into a Redemption Agreement.  The twenty-eight page Redemption Agreement provided in part: "This Agreement shall be deemed to be a contract made under the laws of the State of Delaware, and for all purposes shall be construed in accordance with the laws of said state, without regard to principles of conflict of laws."  (Doc. #5-2, Exh. A, § 6.7.)  The Redemption Agreement contained no forum selection clause.  The purchase price in the Redemption Agreement was $154 million; the Colliers received $139 million at closing, with the balance placed in escrow pursuant to an Escrow Agreement.

Various post-closing disputes arose between LFC and the Colliers, resulting in a series of agreements.  A Settlement Agreement effective May 27, 1999 (the 1999 Settlement Agreement) amended and restated portions of § 1.1 and § 5.1 of the Redemption

Agreement, which was "otherwise to remain in full force and effect as originally stated".  (Doc. #5-3, Exh. B, § 2.)  The 1999 Settlement Agreement also provided: "This Agreement shall be interpreted in all respects according to, and governed by, the laws and decisions of the State of Oklahoma, and any action to enforce this Agreement shall be brought in the federal courts of the State of Oklahoma."  (Id. at § 17.)

A Supplement to Settlement Agreement dated August 23, 1999 (the First Supplement) amended the 1999 Settlement Agreement and provided that the Barron Trust and Miles Trust would assume liability for the Colliers' obligations under Section 5.1 of the Redemption Agreement.  (Doc. #5-4, Exh. C.)  Under the "Miscellaneous Provisions" clause, the First Supplement stated that the First Supplement "shall be interpreted in all respects according to and governed by, the laws and decisions of the State of Oklahoma and any action to enforce this Agreement shall be brought in federal courts of the State of Oklahoma."  It further stated that "This [First Supplement] Agreement shall be deemed to be an integral part of, and a material term and condition of, the [1999] Settlement Agreement and is being effected as a supplement and amendment thereto."  (Id.)

A Second Supplement to Settlement Agreement, dated September 17, 2002 (the Second Supplement) further amended the 1999 Settlement Agreement.  The Second Supplement incorporated the Redemption Agreement and the 1999 Settlement Agreement, which

"remain in full force and effect as originally stated and are reconfirmed hereby for all purposes." (Doc. #5-5, Exh. D, ¶1.) The "Conflicts" clause of the Second Supplement provided that "[i]f any of the terms of this Second Supplement conflict with the terms of the Settlement Agreement, the terms of the Second Supplement will control." (Id. at ¶ 6.) The Second Supplement does not contain a forum selection clause or a choice of law clause.

A Resolution and Modification Agreement dated December 30, 2002 (the RM Agreement) addressed the parties' anticipated settlement with the FDIC. The RM Agreement provided:

> Except for Section 7 of the Settlement Agreement which will remain in full force and effect as originally stated and for the provisions of the Redemption Agreement and for the Settlement Agreement as expressly amended and restated and continued in effect pursuant to Section 5, below, the Redemption Agreement and the Settlement Agreement are, as of the Effective Date, completely superceded and supplanted and replaced in all respects by this Agreement and this Agreement shall hereafter be the sole controlling document between the parties as to the handling of the FDIC Claims without the need of any further action of the parties, provided that this provision shall not in any way be deemed to effect the ability of the parties to this Agreement to fully enforce all of their rights hereunder.

(Id. at § 4.) In Section 5, seven provisions of the Redemption Agreement, the 1999 Settlement Agreement, the First Supplement, and the Second Supplement were amended and restated and were to continue in full force and effect as amended. (Id. at § 5.) The choice of law provisions or forum selection clauses of the prior agreements were not among the provisions which survived. The RM Agreement itself, however, contained a "Governing Law" clause which

-4-

provided: "This Agreement shall be interpreted in all respects according to, and governed by, the laws and decisions of the State of Oklahoma, and any action brought to enforce the provisions of this Agreement shall be brought in the United States District Courts located in the State of Oklahoma." (Id. at § 10.)  The RM Agreement further stated that "[t]his Agreement constitutes the entire agreement of the parties with respect to the subject matters hereof and supersedes all prior agreements and commitments, including, without limitation, the Redemption Agreement and Settlement Agreement." (Id. at § 13.)

**II.**

Count I of the Amended Complaint alleges that defendant breached the Redemption Agreement by failing to disclose substantial federal income tax benefits that could be claimed to reduce the Colliers' liability under Section 5.1 of the Redemption Agreement and by failing to pay plaintiffs in excess of $5.4 million from the Guarini Litigation.  Count II alleges defendant breached its fiduciary and other special duties by failing to disclose material facts regarding the net income benefits defendant realized or would realize in connection with a settlement of the FDIC counterclaim and by failing to distribute the Guarini Litigation award to plaintiffs.  Count III alleges defendant engaged in constructive fraud by failing to inform plaintiffs of all related tax benefits, acting for its own account, concealing tax benefits, and appropriating tax benefits for its own benefit.

Count IV alleges fraud in the inducement with respect to the RM Agreement because defendant failed to disclose income tax benefits defendant would ultimately claim and receive.  Count V seeks a declaratory judgment as to whether the 1999 Settlement Agreement or a provision of the RM Agreement eliminates and extinguishes plaintiff's claim that defendant had not taken into account certain economic benefits allocable to the Colliers.

Defendant IBC seeks to dismiss the Amended Complaint for lack of personal jurisdiction or, in the alternative, seeks to transfer venue to the Western District of Oklahoma.  Plaintiffs object, and argue that Section 5.1 of the Redemption Agreement remains alive, and because the Redemption Agreement contains no venue or jurisdictional clause, venue is proper and can be alleged in Florida.  Plaintiffs argue that while the 1999 Settlement Agreement contained an Oklahoma choice of law and venue provision, it does not apply to Section 5.1 of the Redemption Agreement.  (Id. at ¶ 13.)

### III.

The general principles concerning forum selection clauses were set forth in P & S Bus. Machs., Inc. v. Canon USA, Inc., 331 F.3d 804, 807 (11th Cir. 2003)(citations omitted).  Clear, strong language, such as that used in these agreements, demonstrates the mandatory nature of the forum clause in question. See Excell, Inc. v. Sterling Bolier & Mech., Inc., 106 F.3d 318, 321 (10th Cir. 1997)(discussing permissive versus mandatory forum clauses).  See

also King v. PA Consulting Group, Inc., 78 Fed. Appx. 645, 648 n.2 (10th Cir. 2003).

The Court concludes that the net effect of the various agreements is that there exists a valid and enforceable forum selection clause requiring that this action be brought in federal court in Oklahoma. The original Redemption Agreement contained no forum selection clause. Portions of the Redemption Agreement at issue in this case, including Section 5.1, were amended by the 1999 Settlement Agreement, which contained a forum selection clause of federal court in Oklahoma. The First Supplement, which also amended Section 5.1, contained an Oklahoma federal court forum selection clause. The Second Supplement did not contain a forum selection clause, and its terms were not inconsistent with the forum selection clauses in effect based on the 1999 Settlement Agreement and the First Supplement. The RM Agreement also contains a forum selection clause of federal court in Oklahoma. Upon consideration of each of the agreements, it is clear that a federal district court in the State of Oklahoma is the agreed-upon forum. A related case is currently pending in the Oklahoma City Division of the Western District of Oklahoma[1], and the motion to transfer venue will be granted to that division. The personal jurisdiction issue is denied as moot.

---

[1] On December 7, 2006, IBC filed a Complaint against plaintiffs and others in the Western District of Oklahoma, Oklahoma City Division. See 5:06-cv-01345-M.

Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

1. Defendant's Motion to Dismiss for Lack of Personal Jurisdiction or, in the Alternative, to Transfer Venue (Doc. #16) is **GRANTED** to the extent that the case is transferred to the Western District of Oklahoma, Oklahoma City Division. The motion is otherwise **DENIED** as moot.

2. The Request for Oral Argument (Doc. #18) is **DENIED.**

3. The Clerk shall transmit a certified copy of this Opinion and Order and a copy of the docket sheet to the Clerk of that district and/or otherwise effectuate the transfer of the contents of the case to the Western District of Oklahoma, Oklahoma City Division.

4. The Clerk is further directed to terminate all pending motions (Doc. #44) and deadlines as moot, and close the file.

**DONE AND ORDERED** at Fort Myers, Florida, this ___17th___ day of May, 2007.

JOHN E. STEELE
United States District Judge